Good morning, Your Honors. My name is Janelle Harris, and I'm counsel for the appellant Michael Saavedra. I would like to reserve three minutes of my time for a rebuttal, please. Just at the outset, I will note that it's not my intent to affirmatively address all of the alternate grounds that the appellees have raised for affirmance. We'll take those into consideration. What do you want to talk to us about today? Yeah, I'm happy to answer any questions, but what I'd like to focus on is the meat of this case, which are the issues raised by appellant. And I'd like to begin with a sort of conundrum in the district court opinion. The district court found, and I'm looking here at excerpts of Record Page 11, that the notice here was insufficient for Mr. Saavedra to, quote-unquote, be able to present his views or even, quote, at least be able to deny the conduct or offense at issue. Nonetheless, the district court then found that an officer, a reasonable officer, could find that this satisfied due process. That, I would submit to you, is incongruent. And I think that there were two problems that led to this result. The first problem was that the district court and now appellants, pardon me, appellees, are taking an unduly cribbed view of what clearly established law is. There's a sense that, on their part, that there must be a case from this circuit directly on point that says, to satisfy some notice, you have to do X, Y, and Z. And I would submit to you that that is an unduly narrow view of what clearly established law is for purposes of qualified immunity. The second problem is I think that the district court, to some extent, and particularly now appellees in their briefing, are hung up on the term some in some notice, which is the undisputed standard here, and forget that we are talking about due process notice. And due process is a spectrum. And admittedly, some notice may be on this side of the spectrum instead of this side of the spectrum. But we can imagine analogously a car. I mean, you could get a standard model car or you could get one with lots of bells and whistles, depending on your requirements, but the car still has to drive. In other words, although the level of notice may vary, fundamentally the function of notice for due process purposes remains the same. And what the Court found here was that the notice was insufficient even for Mr. Saavedra to be able to make an affirmative response or even deny what was at issue. That is tantamount to no notice for due process purposes. Kagan. Yes. Would you point me to what cases you think support the some notice at the time that there's an administrative segregation decision? Because that's we've – everybody throws that around coming out of the parole context and everything else. So what case do you think best targets that to the procedure where we are here as opposed to at the time one might have a hearing on this topic? Right. I would point the Court to two primary cases. And the first case is Hewitt. And I would look at Hewitt 459 U.S. 474 to 476, where the Court talks about two types of administrative segregation, one type where there's an investigation pending and a second type where there are actually quite coherent disciplinary charges that may be pursued through the disciplinary proceeding process. And Hewitt lays out what is required in both cases and says it's the same. So insofar as the appellees have relied on cases like Cato to suggest that this notice is not required, I think that that's contrary to Hewitt. And then the second case that I would suggest that we looked at is Toussaint, particularly at 801 Fed Third 1080. And you mentioned parole, and I don't know whether you want me to talk about the Cook case at all, but I don't think that we're dealing with ‑‑ I don't think that this case is directly analogous to what the Court was dealing with in Cook, although an issue in Cook was not actually the notice question, but rather the some evidence standard. So we have a some notice and a some evidence standard. So is it your position that it was constitutionally required to have notice upon placement in administrative segregation? That's right. But here he actually didn't even receive notice for a nearly two‑month period where there were several reviews. What's your position? I know he got notice by the time June rolls around, but what's your position of when it's required? Because in order to also benchmark qualified immunity, we need to look at that. I believe that notice was required at the time or shortly thereafter the actual placement in administrative segregation, in this case on April 15, 2004. There was subsequently a review at which Mr. Saavedra attended on April 16, 2004. There was another review on April 22, 2004, and then there was the review on June 10, 2004. He went through those three, and I gather at June 10th he's finally given a copy of this Form 1030. That's correct. But at the April 16th preliminary hearing he was not, and at the April 22nd he was not, and I gather he was put into the ASU on April 15th. That's correct. It seems to me that the state should be allowed at least the possibility of putting somebody into ASU without having a hearing subject to some requirement that a hearing be held as soon as reasonably possible such that a due process requirement wouldn't necessarily attach the day he's put in. But, of course, they do have a hearing the very next day, a preliminary hearing I gather in front of Captain Mandeville, and at that point you're saying at that point he needs to have some notice of the nature of the charge against him. Now, what he was told at that time he's, quote, been deemed a threat to the safety and security of this institution's staff and inmates, even though internally they had a copy of the Form 1030 that said pending confidential investigation being conducted in the ASU into staff over familiarity. Why isn't it some notice within the meaning of the constitutional requirement that they give him this sort of very general language? Now, sometimes I have no idea why somebody's doing something bad to me. I think he had an idea. Now, he's saying anybody who's charged with bad behavior or a crime order, I want to know exactly what it is that's being charged because maybe they didn't figure out what I was really doing, or maybe they figured out only half of it, or maybe they've charged in such a way that I can mount a defense and so on. Is your argument then not that he has totally mystified as to why this was happening to him, but that somehow it inhibited his ability to make a defense? Help me understand why the notice he was given on the 16th wasn't enough. Certainly. Well, let me just first clear up one factual issue, which is that the CDC Form 1030 was not an internal document. It was supposed to be provided to him, and if you actually look at that document and the other versions of the CDC Form 1030 in the record, because there are several subsequent versions, it says at the bottom, you know, there are three copies, and there was actually, it was determined throughout this process that he should have been given this document and simply was not. Yeah, I gather the internal document record shows us that internally they realize that they made a mistake. That's right. They say it was not given to him, and it was a mistake not to give it to him. But the, I don't think the document answers the constitutional question. I think that's right. I'm just trying to simply just make sure that we're all on the same page. To turn now to the constitutional question, I would submit a couple of things. First of all, I think when you look at the California administrative segregation regulations, this really did no more than reiterate the fact that you're being placed in administrative segregation. And I copied that in the brief, but if you look at 15 Cal Code of Regulations 3335, subdivision A, I mean, basically the notice that he was given without the CDC Form 1030 did nothing more than said you're being put in administrative segregation. That is in no way an individual, fact-specific, charge-related notice. And I think that Hewitt says that there needs to be something that relates to what the basis for the action is. And I think that then also Wilkinson v. Austin refines that. And although Wilkinson v. Austin was decided in 2005, it makes it very clear that it's simply applying bedrock due process principles. It's not creating new law. And Wilkinson v. Austin says it needs to be individualized. It needs to have some degree of factual specificity, because otherwise it's not serving either of the two main purposes of due process. First, to prevent erroneous deprivations, and second, to allow someone to have some ability to make an affirmative response. And I would question if someone says to you, you're a threat, how is one supposed to respond? And we don't know from the record exactly what he did or did not know. If you look at the supplemental mechanism for response at that point, I mean before there's an actual completion of an investigation. We'll hear that he was afforded three places at which he was given an opportunity to speak, and at each case he did ask, you know, I don't have enough information. The first was on April 16th, the second was on April 22nd, and then finally on June 10th. So he was actually being, you know, given an, I mean. He demanded what to know at the charge court. He wants to know why am I here. Let's say you're all correct, you're correct on your constitutional analysis, and leaving aside the defenses, what's the remedy at this point? The remedy in terms of what I'm asking this court to do? Asking the court to reverse some remand and let him go forward with his case. Right. But, I mean, ultimately you're talking about damages? Ultimately we're talking about damages. Okay. Now help me out. Assuming for the sake of argument that the detention was justified ultimately, what are the damages for deprivation of due process? Okay. The first level of damages would be nominal damages. That's undisputed that he would be entitled to nominal damages. Under certain circumstances he might also be entitled to compensatory damages. Now given the Prison Litigation Reform Act, the circumstances under which a prisoner can establish compensatory damages are very limited. We just don't know on the record whether that might be in play or not. And then finally there would be the potential if nominal or compensatory damages were awarded for punitive damages. He's also sought expungement, and that goes to the issue of favorable termination, which unfortunately I believe our record is not adequately developed. However, there is reason to believe on the margins of the record and looking at California law that he probably did have the forfeited credits restored and that that would count as a favorable termination, and so he would then be entitled potentially to expungement. Okay. Any further questions? Thank you. We'll give you a couple minutes for a moment. Thank you. I guess I'm the first that gets to say today good afternoon, Your Honors. And it is the Court. My name is William Frank from the Office of the Attorney General for Defendant Appellees, and there are several key points I'd like to emphasize today. First, regarding Mr. Civetra's placement and retention in NADSEG, Defendant Scribner, Salaya, and Hedgepeth are qualifiably immune. Next, Salaya and Hedgepeth's June 10, 2004 notice is not contested as insufficient, and that's their entire conduct that's at stake in this case. Third, Scribner's liability for the April 15, 2004 placement notice, and that's the only defendant that I represent regarding the placement. I'm sorry, Captain Mandeville, I believe, was never served, and Lieutenant Travers was never served. Regarding Scribner's liability, as already conceded by counsel, it's capped if at all, if he has any liability, at nominal damages. And finally, the record supports that Defendants McCall and Perrin had a legitimate penological reason to limit Civetra's information at a disciplinary hearing. Now, regarding the ‑‑ Can I start with that last one? Yes. They had a legitimate penological interest to keep the 1040 form from them on April 16 and April 22. Is that what you're saying, or are you saying something else? I'm saying something else, Your Honor. Okay. I'm talking about the December 04 disciplinary proceeding, a separate part of the case, the second phase. Okay. I believe the law is not clearly established in 2004, what some notice is. Definitely, Hewitt talks about being placed and retained in ADSEG pending an investigation, that context, in 1987. But that case was decided before Sandin. And we also have Tucson 1, which is before Sandin, that also adds some notice of the charges or the reasons being considered for placement in administrative segregation. And arguably here, the placement notice of April 15, 2004, gives some reason why he's being considered for placement in administrative segregation. Now, does the language that's deemed a threat to the safety and security and so on, is that just boilerplate out of the regulation? I would say it's boilerplate out of the regulation, but I want to draw your attention to three regulations. You just mentioned 335A. On April 16th, he had what is known as a review under 337A. And that's just a review for a paperwork to be prepared for the actual hearing that occurred on April 22nd. That's the hearing under 338E, in which, if it's regarding or related to a disciplinary matter or proceeding, in this case, there's still an investigation underway, so it could result in a discipline charge. Under that regulation, the assumption is that the charge is true or the misconduct is true. So the inmate at that point is left to dispute issues like identity. That's not me. That's not my CDC number on that form. And he had that opportunity based on that April 15, 2004, notice. Now, what do I know in the record that the inquiry on April 16th and I guess on April 22nd is limited in such a fashion? With respect to the inquiry on the 16th, that's following the procedure under 337A. And that's the notice, I believe, that is actually There's information filled out on the bottom of the form of the April 15th form by Captain Mandeville. The form itself is signed by Lieutenant Hughes for Warden Scribner. And then the next day there's a notation for April 16th that relates to questions like, do you want to have witnesses on April 22nd or the date that we're setting for this hearing? Do we need to sign a staff assistant? I mean, is there a mental health issue here? How would you know if you needed witnesses if you didn't know why you were put in ADSEC? That's a good point, Your Honor. With respect to does he have an entitlement to witnesses at this point? No. No, but I mean, they're asking me, do I need, do I want to have witnesses? Well, I don't know. What's the hearing about? Well, it's about security and safety. Well, he also spoke to a mental health clinician on April 19th about the ADSEC placement. That's recorded on the April 22nd committee meeting minutes. And referring back to the notations that that clinician made, he understands that he's being investigated for staff over-familiarity. So I think at that point Say this again. Would you just tell me, he understands when that is staff over-familiarity? On April 20th. On April 19th? Rather. And how does he understand that? Well, if you're asking me was he given an oral notice at that point, which would satisfy the Hewitt standard if Hewitt applies, the record doesn't necessarily support that direct, there's no direct evidence of that, but if you make an inference that if he believes or understands he's being investigated You're talking about what he told the clinician who reported it in notes? One more time, Your Honor? You're talking about what he said to the medical clinician and that that's contained in the notes, and your argument is not that you complied with notice, but that he understood what it was. He had a constructive notice at that point. Well, maybe, but I guess this goes back to my question earlier, which is he probably had a pretty good idea of what was going on. But what he didn't necessarily have a pretty good idea is what he's charged with. Because, you know, I might have committed ten crimes, but I'm very interested in knowing what's in the indictment because I don't want to start talking about the six crimes for which I'm not indicted. And he hasn't been charged with anything at this point. Right. And he's not going to be charged until June. There's an investigation. I think he has an inkling of what the investigation is about. Could I ask just a different question? If you're put in ADSAG, is there more than one regulation that can land you there? In other words, you've given us one regulation about safety and security. Are there other regulations that can land you there? If I was put there for a different reason, you would tell me that reason. You know, as Justice Rehnquist, I believe, wrote, I think it's actually the Hewitt decision, it's a catch-all. There's a lot of reasons you can be in ADSAG. You can be placed there based on. I know. My question. Listen to my question. Yes, there are. Is there more than one regulation that is used as a foundation to put prisoners in ADSAG? And if so, what are they? Yeah. The regulation is relating to gang validation. And I believe it's 3341. Is that the only other one besides safety and security? No, actually, within the 335A, there's other subsections within 335. For your own safety, there's other reasons. There's a number of subsections in 335A that don't just relate to a disciplinary matter or proceeding. 335A is you've been deemed a threat or a danger. But there are other reasons why. For instance, you might be, you might have suicide ideation. And then it would tell you for your own safety that you've been placed there? Or would it just tell you the regulation? The notice itself in that context? Yeah. Depending how the form is filled out, you know, it's a daily operation of the prison. And what information they're going to put on that form to comply with HIPAA requirements, X, Y, and Z. I couldn't sit here and tell you today exactly what that form would say. Now, with respect to this particular justification for putting him in ADSEG, I gather that the prison regulations actually said that he should have received this form 1030. It's just that he did not. Is that correct? That is not correct, Your Honor. Let me make this clear. On 338A and D, I believe it's talking about the 114 form, which is the form he's provided on April 15th. A 1030 form actually doesn't appear in the regulations that we're discussing. But the entire article that we're discussing as far as regulations have to do with administrative segregation placement. There's an entirely different article, Article 5, that has to do with inmate discipline. And within that, there's 3321 regarding confidential information. Let me stop you there before we get too far down that road. I'm just reading from the report that's prepared in the wake of the June 10 hearing, maybe even prepared on June 10. Quote, a 1030 was generated on 415.04 but was not given to the inmate due to staff error. That sounds to me as though under prison regulations, he should have been given it but wasn't due to staff error. And you're telling me, no, he was not entitled to have it and there was no staff error? I'm telling you that it might be the procedure or practice of that particular prison to generate a 1030 during ad sec placement and retention regarding investigation. And if generated, to give it to them. Right. But in the general regulations, there's no requirement. So if this goes to the reasonableness of an officer with respect to looking at qualified immunity, though not dispositive, following the regulations can go to the reasonableness. But not following what apparently is the custom within the prison could also go to reasonableness. Mistake of fact or law under Knox. But the 1030, let's see, just so I make sure I understand what you're saying. The 114 form is what he gets when he goes in initially. That's what he got on April 15th. That's what he got. And then the 1030 form, is it correct that that's not a form that you would be given at the outset? I see my time has expired, but let me answer your question. A 1030 is only generated when confidential information is being used in the context of making a disciplinary decision during a disciplinary hearing. That this prison chooses to use that form in the context of ad sec placement and retention, that's apparently the policy based on the record that we can look at that they're following. Whether or not it arises from the regs, it arises out of a disciplinary hearing. But I want to make sure that we're on the same page just with respect to what happened and what the prison thinks should have happened. This is not necessarily the constitutional should have happened, but what the prison thinks should have happened. As I gather from the June 10 report, the prison report prepared by the prison says he should have gotten that 1030 before now. Right. But they give it to him on the 10th, and they write, quote, a 1030 was generated on 415, but was not given to the inmate due to staff error. That is correct, Your Honor. Okay. Let me ask a constitutional question, if you might. I mean, leaving aside all the regulations, and I understand the need for confidentiality. Obviously, it's not only regulatory, but it's part of penological practice in such matters. But how do you balance that constitutionally with giving somebody adequate notice so they can defend themselves? I mean, the concerns go back to the Star Chamber. What do you think the standard is, and how do you comply with it? Well, I think when we're talking about a placement and retention in ADSEG during an expeditious investigation, and that's the reason that Mr. Saavedra was in ADSEG at this point, the prison has to be allowed to investigate, you know, to see what's happening and see what kind of danger is posed. I think when it becomes, when you have these reviews on June 10th, if it had gone on longer than that, then you start running into constitutionality issues. But the notice got more specific, obviously, on June 10th, and he actually had notice before June 10th because he was interviewed on June 2nd by Defendant McCall regarding, you know, this episode. But that's a long time to be in ADSEG. Well, I mean, I know people went longer, but, you know, it's a fair amount of time. Forty-five, fifty days, I mean, ADSEG itself doesn't, you know, I'm not going to get into the no protectable liberty interest argument, only to the extent that because perhaps now it's not a requirement, even though we might have conceded it below, that does go to our qualified immunity argument. So at the end of the day, is your position is that you don't need to tell the inmate anything when you're investigating, just throw them into ADSEG without notice of the charges? Constitutionally or under the regulations? I'm talking constitutionally. Constitutionally, yes. Okay. You wouldn't even have to say you're being put there for security reasons? No. Okay. That's a pretty... For expedition, no limited context of an investigation that's being completed within 60 days. Now, if we're talking, like, on April 15th, that's the answer I'm giving you. On June 10th, my answer may be changing. In July, it's changing again. Right. No, I was asking about the initial confinement. I'm quite willing to say that you should be given, you know, if you've got a problem, you can put somebody in ADSEG right now. But as soon as you start having hearings, where you start saying, okay, here's what's going on, and you had a very informal hearing on the 16th, you had a preliminary hearing on the 22nd, it's at that point where I say, well, if we're beginning to inquire as to whether or not he ought to be there, at that point, it seems to me, some obligation to provide information is there, and the question is how much information. If I may, just a very quick answer. If you look at the timeline of this investigation, that investigation is occurring mostly in the month of May into early June. Yeah, and the investigation was pretty prompt. But prisons are very busy places. Could they have gotten to that investigation before May 15th? Probably not. What's the purpose of the April 16th and April 22nd hearings? Are they hearings? What do you call them? Make sure the paperwork is in order. Make sure that the inmate is the person identified in this paperwork. I mean, these are very large institutions. Make sure there's not an error of identity. And that there's at least something that says we have a reason why we've internally put this person in administrative segregation. Because that's a limited resource that the prison has itself as well, to protect inmates from each other and from staff. And I confess that I can't sum it up from my memory as to whether in your brief you've said, now the purpose of April 16th and April 22nd is a limited purpose, and the real hearing is June 2nd. Have you written that? One more time, Your Honor? The last part of your question? Well, let me recapitulate the argument I'm just hearing from you, and that is, well, the purpose of the April 16 preliminary hearing in front of Mandeville and then the purpose of the April 22nd hearing was just for paperwork. And the real hearing, the real hearing that we have to pay any attention to at all is June 10th. Did you make that argument in your brief? No, I didn't. But there is an important purpose. The proper person in that segment is important, and also the check on the progress of the investigation, that was checked on April 22nd. That was checked on June 10th. We would have to check on it for months or years. We don't want to run into a situation where an inmate is languishing, you know, for months or years on end pending an investigation. Okay. And I asked you the same thing. The argument you just made is in the last 10 seconds. Was that in your brief? A character of that argument was, which is what he was preparing for on April 16th and April 22nd, was merely an identity check. And that is in my brief. Okay.  Thank you. We'll give you three minutes. Trying to equalize the time. So I want to refer you, first of all, to excerpts of record, page 52, pages 52 to 53. This was Mr. Saavedra's declaration in opposition to summary judgment. And he discusses from his experience the proceedings on April 16th, April 22nd. And you will see that he was given an opportunity to speak. And the problem, I mean, they can classify it however they want. I don't think that the regulations or practice is necessarily as clear as Mr. Frank suggests. But clearly Mr. Saavedra was being asked to give some account here. And the issue of identity and whether you made a mistaken identity does have constitutional implications. And that's discussed in Wilkinson v. Austin, where they say that one of the purposes of due process is to ensure that you actually have the right person. And so if you're going to figure out whether you have the right person and give them some meaningful opportunity to speak, they need to get more notice than simply saying you're a threat. Imagine that, you know, someone would say, well, you're guilty of contraband. Well, what contraband? Is it my Malcolm X book? Is it my pornography? Is it something else I have? How can someone adequately speak at all if all they have been told is you are deemed a threat? Now, with respect to the issue of at what point ---- But if that's not the purpose of the hearing, if you're in the preliminary stages of investigation, how do you benchmark the timing of constitutionally required notice? Okay. That was actually the next issue I was going to get to. First of all, I think that appellees suggest that somehow if an investigation is ongoing that they're exempt from due process. I think Hewitt makes clear that that's not the case. And, again, I would look at pages 474 to 476 in Hewitt, where Hewitt actually talks about the circumstance of someone being under an investigation but disciplinary proceedings not yet having been brought. And that was precisely the case here, and Hewitt says due process is required. And, in fact, they knew why they were investigating him. They prepared a form that said why they were investigating him, and they simply didn't give it to him. Now, in terms of also the timing of the hearing, this was addressed at least briefly in the opening brief, and I'm looking at the opening brief, page 25. And what Hewitt says at 476, note 8, is that there has to be an opportunity to be heard within a reasonable time after being confined to administrative segregation. In Toussaint v. McCarthy at 801 at Fed Second at 1100, note 20. Could you go back to you just read or at least summarize from Hewitt about must be within a reasonable time? I have Hewitt in front of me. Where is that? That was at Hewitt, page 476, note 8. Note 8?  And in Toussaint, it imagines a hearing within 72 hours of segregation would meet the reasonable time standard, although it says that that's not a strict threshold. That was what was dealt with in Toussaint. So where are you in Toussaint? At page 801, Fed Second, 1100, note 20. 1120? Hang on a sec. My Toussaint is 801? Yes. Mine only goes to page 1119. So is it one? I thought it was 1100, note 20. 1100, note 20. Oh, 1100, note 20. Yes, I apologize if I misspoke. No, no, you didn't. I misheard. All of these sites appear on page 25 of the opening brief where this issue was not really raised at the district court level, the issue of timing. And so for that reason, the record really doesn't have a lot of information on the things that Mr. Frank was just asserting here about what the prison's procedure actually was and whether it thought this type of hearing before someone was different than this type of hearing. But there is that passage in the opening brief about the issue of timing. And it's not crystal clear, but the prison doesn't have absolute discretion to just give notice and an opportunity to be heard whenever they want to or whenever the regulations say. There is a constitutional dimension to the timing. And we haven't really addressed the other issues, but I believe they've been fully briefed on the reliability and failure to assess the reliability of the confidential information, which was not firsthand information, as the district court asserted, but was actually second or even thirdhand if you look at the record. And then the final issue, which was that the appellees never came forward with any security reasons why at the point that they were in disciplinary proceedings they could not give a name, they could not give any details of all specifics. Okay. Thank you very much. Thank you, Counsel. I also want to thank you for your pro bono representation. It's very helpful to the court. So this argument will be submitted. And thanks to the counsel. Is there any objection now to putting this transcript or the digital audio transcript on the Web? We haven't touched upon anything that I believe comes out of this deal. Thank you, Counsel. Any objections? I would just say the only statement, the statement I just made, was that the information is second or even thirdhand. Does someone hint at something that might not have been in the record? I'm just trying to be scrupulous here because there is a protective order in place. But that's the only thing that I know of that would be affected. Thank you. Thank you. Thank you all for your arguments. The case will be submitted, and we'll be in recess for one more. Thank you.
judges: Thomas, McKeown, Fletcher